IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MARK S. BOUCHER, an individual, LINDA B. BOUCHER, and individual, and as husband and wife.<br><br>                 Plaintiffs,<br>v.<br><br>ZIMMER, INC., a Delaware Corporation,<br>                 Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:06CV380 DAK |

This matter is before the court on Defendant Zimmer, Inc.'s ("Zimmer") Motion for Summary Judgment and Motion to Exclude Plaintiffs' Experts. A hearing on the motions was held on June 23, 2010. At the hearing, Zimmer was represented by Stephen Bennett and Rick Rose. Plaintiffs Mark S. Boucher and Linda B. Boucher were represented by S. Brook Millard. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the motions under advisement, the court has further considered the law and facts relating to these motions. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

This product liability action involves an artificial knee replacement system called the NexGen LPS-Flex Knee ("NexGen Knee"), which was manufactured by Zimmer and was

1

implanted in Mr. Boucher. Central to all of Plaintiffs' claims is that Mr. Boucher twice experienced a fracture of a NexGen Knee component, a rare but recognized risk of knee replacement surgery.

Defendant contends that Plaintiffs have attempted to transform a known complication of knee replacement surgery into a product defect. Accordingly, Defendant has moved for summary judgment on the ground that Plaintiffs have failed to present the required expert opinion in support of their claims. According to Defendant, Plaintiffs have presented no evidence of a manufacturing defect, a design defect, or a warning defect, and they have not established the existence of an express warranty or a breach of an express warranty. Defendants also argue that because all of these claims fail, Mrs. Boucher's loss of consortium claim must also fail.

**PROCEDURAL HISTORY**

Plaintiffs filed this action over four years ago. They asked for – and received – several extensions of the expert report deadline. At one point, Plaintiffs identified four experts, including Mr. Boucher's orthopedic surgeon, Joshua M. Hickman, M.D., and Plaintiffs promised to provide their Rule 26 reports within 45 days. Plaintiffs then again asked for additional time – until September 14, 2007 – but failed to file anything but a short "summary" of preliminary opinions by Duane Priddy, Ph.D. This summary was not signed by Dr. Priddy. Plaintiffs again moved to extend the expert report deadline. In that motion, Plaintiffs indicated that Dr. Priddy's summary of opinions was preliminary and that Dr. Priddy needed to perform destructive testing of the product before completing his report and giving a final opinion. In addition, Plaintiffs stated that Dr. Draganich could not state his opinions until destructive testing could be

performed. Plaintiffs advised the court that the parties were still working on the terms of a destructive testing protocol. The court granted the motion on December 27, 2007, and ordered that Plaintiffs' expert reports would be due 60 days after destructive testing of the device had been completed.

The parties submitted a Stipulated Motion to Amend the Scheduling Order on February 5, 2008, requesting that the court set a date certain for submitting expert reports. The court granted the motion on February 12, 2008 and ordered Plaintiffs to provide expert reports by June 20, 2008. On August 4, 2008, the parties submitted a Joint Motion for Scheduling Conference to reset deadlines in large part because of delays in scheduling Plaintiffs' destructive testing. The court granted the motion on September 12, 2008 and ordered that Plaintiffs provide expert reports by February 13, 2009.

On September 25, 2008, counsel for Plaintiffs, S. Brook Millard ("Mr. Millard"), notified counsel for Zimmer, J. Stephen Bennett ("Mr. Bennett"), that a second device that had been implanted in Mr. Boucher's knee had also failed. Plaintiffs chose to cancel the destructive testing of the first device. Plaintiffs did not serve expert reports by the deadline of February 13, 2009.

On March 27, 2009, Zimmer filed a Motion to Modify Its Expert Disclosure Deadline on the grounds that Plaintiffs failed to submit their expert reports. Zimmer advised the court that Plaintiffs had indicated their intention to file a motion to amend their Complaint to add new allegations regarding a second Zimmer device that was allegedly defective. The court granted Zimmer's motion and granted Zimmer an extension of time regarding its expert disclosure deadline. Zimmer's reports were now due 45 days after Plaintiffs served their reports.

By April 22, 2009, Plaintiffs had not yet amended their Complaint or submitted expert reports, and Zimmer filed a motion asking the court to set deadlines for Plaintiffs to move to amend their Complaint and for a scheduling conference.

On May 1, 2009, Plaintiffs filed their First Amended Complaint and Jury Demand ("Amended Complaint"), asserting claims for relief under theories of strict liability (First Claim for Relief), negligence (Second Claim for Relief), breach of express warranties (Third Claim for Relief), breach of implied warranty of merchantability (Fourth Claim for Relief), breach of implied warranty of fitness for a particular purpose (Fifth Claim for Relief), and loss of consortium (Sixth Claim for Relief).

The parties jointly submitted an Attorneys Planning Meeting Report on June 8, 2009, requesting that the court set a deadline of October 17, 2009 for Plaintiffs to submit their expert reports. On June 16, 2009, the court granted the request. On October 15, 2009, two days prior to their expert report deadline, Plaintiffs filed another motion to extend the deadline until December 16, 2009 to produce their expert reports and to move the expert discovery cut-off until March 26, 2010.

Plaintiffs stated in their motion that the scheduling of the destructive testing had taken longer than expected. On November 3, 2009, the court granted Plaintiffs' motion in part and denied it in part. The court directed Plaintiffs to file their liability expert reports by November 25, 2009, and to file their damages expert reports by December 16, 2009.[1] Plaintiffs did not

---

[1] *See* Docket Nos. 61, 62.

serve the expert reports as ordered. Zimmer timely served its expert reports on January 8, 2010.

## UNDISPUTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

On approximately January 12, 2004, Mr. Boucher underwent surgery for a total replacement of his left knee. Mr. Boucher's surgery was performed by Dr. Joshua M. Hickman at Lakeview Hospital in Bountiful, Utah. Dr. Hickman replaced Boucher's knee with an artificial implant manufactured and distributed by Zimmer, the Zimmer NexGen® Complete Knee Solution.

In April 2005, while in bed, a portion of the plastic pad of the Zimmer product in Mr. Boucher's knee broke off from the implant, causing him severe pain and discomfort. The failure of the implant required Mr. Boucher to undergo a second surgery on approximately May 2, 2005. At that time, Dr. Hickman removed and replaced the broken Zimmer component.

Since the failure of the Zimmer implant, Mr. Boucher has experienced substantial pain and stiffness in his knee, which affects his ability to conduct daily activities and to operate his business. Following the replacement of the fractured polyethylene component, Mr. Boucher continued to have trouble with his knee. In the fall of 2007, his knee pain and instability worsened.

Mr. Boucher had telephone conversations and office visits with Dr. Hickman until August 2008, at which time a decision was made to perform surgery again to determine why Mr. Boucher was having so many problems with his left knee and to change out the polyethylene insert in favor of a thicker insert to decrease the laxity he had identified on examination.

On September 22, 2008, Dr. Hickman again performed a revision surgery of the left knee,

where his intention was to insert a third, larger (14mm) polyethylene insert. During this surgery, Dr. Hickman, for the second time, discovered that the post of the polyethylene insert had fractured at the base.

## DISCUSSION

Plaintiffs' causes of action for strict liability, negligence, and breach of implied warranty are all based on the assertion that the NexGen Knee was defective in terms of its manufacture, design, or warnings. Defendant argues that, regardless of Plaintiffs' theory of liability, all of Plaintiffs' claims require proof of a defect, and Plaintiffs have offered no proof of any defect.

As some evidence of a defect, Plaintiffs appear to rely primarily on Dr. Hickman's alleged statement that Mr. Boucher could expect between 15-20 years of wear from his implants, and then later, Dr. Hickman stated during his deposition that it was "not reasonable" that the device failed. Specifically, he testified:

> But is it reasonable that it broke? Well, no, it's not reasonable; it's terrible that it broke. But, you know, it happened. And I'm not really sure of the cause or who's responsible or you know. . . you know, it's one of those things. I'm not a person who's going to try to play the blame game on Zimmer, *certainly not on Mark*, that's for sure, but things – you know, I wouldn't expect it – to answer your question, I would not expect it [the first post breaking] to happen in 15 months, no.

Dr. Hickman, however, also testified that while he cannot identify the cause of the fracture, he does not believe that the NexGen Knee was defectively designed or dangerous.

Under Utah law, all of Plaintiffs' claims require proof of a defective product. *See Bishop v. GenTec, Inc.*, 48 P.3d 218, 225-26 (Utah 2002). It is not sufficient to simply show that the product failed. *Burns v. Cannondale Bicycle Co.*, 876 P.2d 415, 418 (Utah Ct. App. 1994);

6

*Harris v. Adams*, 2000 WL 33363259 (D. Utah 2000) (unpublished decision) (granting summary judgment where plaintiff could show only that the product broke and could not produce evidence that the product had a defect that caused the resulting injury). Moreover, because any testimony on the design of the NexGen Knee will present technically complex issues that are outside of the realm of jurors' ordinary experience, Plaintiffs must offer admissible expert testimony in order to establish a design defect.

Moreover, to assert a manufacturing defect, Plaintiffs must prove that the NexGen Knee "deviated from the product's design specifications," and Plaintiffs are also required to present evidence of a "safer alternative design" to prove a design defect. *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866-68 (10th Cir. 2003).

Where plaintiffs have failed to offer expert testimony in medical device cases, summary judgment is warranted. *See, e.g.*, *Benedict v. Zimmer, Inc.*, 405 F. Supp. 2d 1026, 1032 (N.D. Iowa 2005) (granting defendant's motion for summary judgment because plaintiffs lacked expert testimony to prove their design and failure to warn claims); *Muller v. Synthes*, 2002 WL 460287 at *6 (N.D. Ill. 2002) (granting summary judgment where plaintiff could not offer expert testimony in medical device case, stating the "question of design parameters of a medical implant . . . is one that goes beyond the knowledge that the average layperson reasonably could be expected to possess.").

In this case, while Mr. Boucher has undoubtedly suffered severe pain and discomfort related to his knee replacement, he has not marshaled sufficient evidence of a defect in the NextGen Knee to survive summary judgment.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendant Zimmer's Motion for Summary Judgment [Docket No. 63] is GRANTED, and its Motion to Exclude Plaintiff's Experts [Docket No. 64] is MOOT because no Expert Reports were served by Plaintiff. The Clerk of the Courts is directed to enter judgment in favor of Defendant Zimmer and against Plaintiffs Mark S. Boucher and Linda B. Boucher.

DATED this 27th day of September, 2010.

BY THE COURT:

DALE A. KIMBALL
United States District Judge